2150

Deborah R. WEINBERG, Individually and as Personal Representative of the Estate of Joe L. Weinberg, III, Appellant v. Bobbie W. WALLACE and Carl R. Wallace, Individually and as Personal Representatives of the Estate of J. L. Weinberg, Jr., Respondents.

(442 S.E. (2d) 211)

Court of Appeals

*Martin S. Driggers* and *W. Carole Holloway,* Hartsville, *for appellant.*

*Marshall U. Rogol,* Darlington, *for respondents.*

Heard Feb. 8, 1994.

Decided Mar. 7, 1994.

GOOLSBY, Judge:

Deborah R. Weinberg, both individually and as personal representative of the estate of her husband, Joe L. Weinberg, III (the son), sought recovery against Bobbie W. Wallace and Carl W. Wallace, both individually and as personal representatives of the estate of J.L. Weinberg, Jr. (the father), for the alleged conversion of good will associated with a family business that was operated by Deborah and Joe Weinberg, III. The trial judge granted summary judgment to the defendants. We affirm.

In the 1950s, the father started the Weinberg Sausage Plant (the business) and operated it as a sole proprietorship. In 1980, the father "turned the business over" to the son. The son paid his father monthly "rent" for the use of the land, building, and equipment. The father, however, did not formally sell the business to the son, and the parties did not enter into a written, formal agreement regarding the rent and its duration.

Between 1980 and 1987, the son claimed all profits from the business on his tax returns as sole proprietorship income. Further, the business was licensed in the son's name. The father and his wife received salaries for their ongoing assistance to the business.

In October 1987, the son died. In his will, the son appointed his widow, Deborah Weinberg, as the personal representative of his estate and named Deborah Weinberg and his daughter as his sole heirs.

After the son's death, the father told his daughter-in-law, Deborah Weinberg, he would run the business or help her run the business until the end of the year, at which time he planned to rent it to someone else. The father offered Deborah Weinberg an employment position with the business, but she refused it.

On January 1, 1988, Bobbie W. Wallace and Carl R. Wallace, the daughter and son-in-law of the father, took control of the business. Subsequently, the father paid to Deborah Weinberg the value of all inventory on hand as of January 1, 1988, plus the balance of the business' bank account as of December 31, 1987.

The father died in August 1990. Shortly thereafter, Deborah Weinberg filed suit on behalf of her deceased husband's estate seeking compensation solely for the alleged conversion

of the business' good will. The trial judge ruled the son's heirs failed to state a cause of action for conversion. This appeal followed.

"Conversion is the unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of the condition or the exclusion of the owner's rights." *Crane v. Citicorp, Nat'l Serv., Inc.* — S.C. —, —, 437 S.E. (2d) 50, 52 (1993) (citation omitted). To maintain an action for conversion, the party must establish either title to or right to possession of the personal property in issue. *Id.*

The property in issue here, good will, is defined as

the advantage or benefit which is acquired by an establishment beyond the mere value of the capital, stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers on account of its local position or common celebrity, or reputation for skill or affluence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices.

*Donahue v. Donahue*, 299 S.C. 353, 359, 384 S.E. (2d) 741, 745 (1989) (citations omitted).

The son's heirs argue they are entitled to the value of the business' good will independent of any physical assets that were owned by the father. We disagree.

"The owner of an asset or business is the owner of the good will generated through the asset or business." *Karageorge v. Cole*, 565 So. (2d) 502, 510 (La. Ct. App. 1990) (citation omitted). Good will, however, "exists as property merely as an incident to other property rights and is not susceptible of being owned and disposed of separately and apart from the property right to which it is incident." 38 C.J.S. *Good Will* § 3, at 951 (1943); *see Donahue*, 299 S.C. at 359, 384 S.E. (2d) at 745 (citation omitted) (analyzing the nature of good will arising out of a professional practice, the supreme court stated good will does not possess value or constitute an asset separate and apart from the professional practice); 38 Am. Jur. (2d) *Good Will* § 9, at 917-18 (1968) ("[G]ood will may not be disposed of independently of the business or profession

in which the good will inheres.").

Because good will inseparably adheres to a business and its assets, it cannot be the subject of conversion unless the business or its assets are also the subject of conversion. *McIlvaine v. City Nat'l Bank & Trust Co. of Chicago*, 314 Ill. App. 496, 42 N.E. (2d) 93, 106 (1942) (wherein the court stated good will cannot be appropriated unless the business and its assets are likewise appropriated).

The business assets to which good will inseparably ad-heres vary depending upon the business in question.

For example, if the business is a professional practice, then " '[i]t attaches [solely] to the person of the professional man or woman as a result of confidence in his or her skill and ability [and] does not possess value or constitute an asset separate and apart from the professional's person.' " *Donahue*, 299 S.C. at 359, 384 S.E. (2d) at 745 (citation omitted). Other business assets to which good will may adhere include: (1) the business' trade name; (2) the business' location; and (3) the business' fixtures, inventory and other tangible assets. *Casey v. Casey*, 289 S.C. 462, 466 n. 2, 346 S.E. (2d) 726, 729 n. 2 (Ct. App. 1986), *rev'd on other grounds*, 293 S.C. 503, 362 S.E. (2d) 6 (1987); *see Karageorge*, 565 So. (2d) at 510 ("Good will includes every positive advantage acquired, arising out of the business of the old firm, whether connected with the premises where it was carried on, with the name of the old firm, or with any other matter carrying with it the benefit of the business of the old firm").

Here, the evidence conclusively establishes the son had neither title to nor right to possession of the business or its assets. Insofar as the business' trade name is concerned, the heirs raise no issue regarding the defendants' use of the "Weinberg Sausage Plant" trade name. Regarding locality, it is undisputed the father owned the real estate upon which the plant is located. Likewise, there is no evidence to support a right of continued possession and use of the property, building, or location of the sausage plant. The rental relationship between the father and the son was a month-to-month tenancy, given the absence of any evidence of a specific agreement between the parties. *See* S.C. Code Ann. § 27-35-30 (1991) (all tenancies of real estate "shall be deemed from month to month" unless there is an agreement to different

terms). Moreover, Deborah Weinberg concedes her father-in-law was at all times the owner of the tangible assets of the business, including the equipment, the plant, and its fixtures. Finally, the heirs admit nothing prevented them from carrying on their own sausage business.

Under these circumstances, the son's heirs state no claim for conversion of the business, including its tangible assets and its locality. Absent a claim for conversion of the business and its assets, which are inextricably united with the asset of good will, the heirs' claim for conversion of good will, as a separate asset, fails.

Affirmed.

BELL and CONNOR, JJ., concur.