THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Linda Fowler Blanton, (k/n/a Fowler) Respondent,
 v.
 Tracy Gary Blanton, Appellant.
 
 
 

Appeal From Cherokee County
 Georgia V. Anderson, Family Court Judge

Unpublished Opinion No.  2007-UP-129
Heard January 10, 2007  Filed March 23, 2007  

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

 
 
 
 William G. Rhoden, of Gaffney, for Appellant.  
 Grace Gilchrist Knie, of Spartanburg and John S. Nichols, of Columbia, for Respondent. 
 
 
 

WILLIAMS, J.: Tracy Blanton (Husband) appeals the family courts valuation of his business.  Husband contends the family court erred in valuing the business without evidentiary support and in relying on expert testimony concerning fair market value indicators.  Husband also argues the family court erred in its award of expert fees.  We affirm in part, reverse in part, and remand.
FACTS
Linda Blanton (Wife) and Husband married on May 28, 1994.  Both worked at Timekin until Wife left to study occupational therapy.  Husband also left Timekin to teach masonry at a technical institute, and later began his own construction business, Blanton Construction.  
Mr. Ben Kochenower testified as Wifes expert regarding Blanton Constructions value.  Kochenower is a Certified Public Accountant with offices in South Carolina.  Kochenower used tax returns, financial statements, and depreciation schedules to value Blanton Construction at a low end value of $67,807.  Additionally, Kochenower examined sales of forty-seven similar construction companies to calculate the value of Blanton Construction at a high end value of $247,536.  Kochenower testified $67,807 and $247,536 are an indication of value, and value indicators are typically less than fair market value. 
Kochenower also testified that his hourly rate is $165, and he worked on this case approximately forty to fifty hours.  He charged Wife $5,000 for his services, but Wife testified she was not able to pay Kochenowers fees.  
Like Wife, Husband enlisted an expert to testify regarding the value of Blanton Construction.  Husbands expert was his accountant, Gail Humphries.  Humphries also did not testify regarding fair market value, but assessed the net worth value of the business at $17,208. Humphries examined Blanton Constructions assets, liabilities, and credit cards.  Additionally, Humphries relied heavily on information provided by Husband in her valuation of Blanton Construction.  However, Humphries did not consider Husbands personal checking account, which contained $72,686, in her valuation. 
The trial court valued Blanton Construction at $100,000 and awarded Wife $5,000 in expert fees.  This appeal followed.
STANDARD OF REVIEW
In domestic matters, we may find facts based on the preponderance of the evidence, but we are not required to disregard the findings of the family court judge, who was in a better position to evaluate the witnesses testimony and credibility.  Doe v. Doe, 319 S.C. 151, 155, 459 S.E.2d 892, 894 (Ct. App. 1995).
LAW/ANALYSIS
A. Evidentiary Support
Husband argues the family courts valuation of Blanton Construction lacks evidentiary support.  We agree.
When valuing marital property, a business should be valued at its fair market value as a going concern.  Brandi v. Brandi, 302 S.C. 353, 357, 396 S.E.2d 124, 126 (Ct. App. 1990).  [F]air market value is the amount of money which a purchaser willing but not obligated to buy the property would pay an owner willing but not obligated to sell it, taking into account all uses to which the property is adapted and might in reason be applied.  Reid v. Reid, 280 S.C. 367, 373, 312 S.E.2d 724, 727 (Ct. App. 1984) (internal quotations omitted).  Factors to consider when determining the fair market value include inventory, accounts payable and receivable, and other legitimate assets or liabilities.  Brandi, 302 S.C. at 357, 396 S.E.2d at 126.  
South Carolina Code Section 20-7-474(1) (Supp. 2005) provides that when determining values of property for equitable apportionment, the family court shall make findings of fact from credible evidence . . . .  
In this case, the family court valued Blanton Construction at $100,000. The family courts order merely listed the experts valuations of Blanton Construction.  Even though the valuation was within the range provided by the two experts, the family court made no evidentiary findings to support its conclusion as required by section 20-7-474(1). 
We note that neither Wifes expert nor Husbands expert testified regarding the exact fair market value of Blanton Construction.  Kochenowers testimony concerned indicators of fair market value.  Humphries valued the businesss net worth at $17,208.  The dissent argues Humphries testimony regarding net worth should be accepted.  Net worth is obtained by subtracting liabilities from assets.  Blacks law dictionary 1639 (8th ed. 2004).  However, a business is to be valued at its fair market value as a going concern.  Brandi, 302 S.C. at 357, 396 S.E.2d at 126.  
A going concern is a commercial enterprise actively engaging in business with the expectation of indefinite continuance.  Blacks law dictionary 712 (8th ed. 2004).  Net worth and going concern differ in that the former does not take into account the ability of a business to continue.  Rather, net worth calculates the difference between a businesss assets and liabilities at a fixed point in time, without taking into account the ability of a business to continue.  The two terms are not synonymous.  Additionally, we find it hard to accept that a trained CPA, such as Humphries, would mistakenly use a term such as net worth in place of fair market value.  We believe the family court, which observed Kochenowers and Humphries testimony, is in the best position to resolve this difference.  
The issue of Blanton Constructions value is remanded to the family court for a determination of the fair market value, and the family court must delineate how that valuation is reached pursuant to section 20-7-474.[1] Accordingly, we reverse and remand for revaluation of the business.   
B. Expert Testimony
Husband contends the family court erred in admitting expert testimony concerning indicators of fair market value.  We disagree.
The admissibility of expert testimony is within the discretion of the trial judge.  South Carolina Dept of Soc. Servs. v. Bacot, 280 S.C. 485, 490, 313 S.E.2d 45, 48 (Ct. App. 1984).  Expert testimony, addressed in Rule 702, SCRE, states: [I]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.  
To determine the value of Blanton Construction, Kochenower examined tax returns, financial statements prepared by Humphries, bank statements, cancelled checks, and personal tax returns.  Kochenower also interviewed Humphries and Husband and requested information on closings and contracts with properties that Husband developed and sold.  Kochenower testified regarding the factors of fair market value, although he hesitated to testify regarding the exact fair market value of Blanton Construction. 
Kochenowers statements regarding fair market value are admissible as expert testimony under Rule 702 because his statements may have assisted the family court judge, as trier of fact, in determining Blanton Constructions fair market value.  Accordingly, the family court would not be in error if it chose to use the Wifes expert testimony in arriving at its own conclusion as to the fair market value.
Nonetheless, Husband argues Wifes expert should not be able to testify as to the indicators of value.  In other words, Husband argues that because Wifes expert was unable to give a fair market value, his testimony should be excluded.  If this logic was applied to Husbands expert, her testimony would also be excluded because Humphries did not testify as to the ultimate issue of fair market value.[2]  We believe Rule 702, SCRE, was implemented to avoid such a scenario.
C. Expert Fees
Husband argues the family court erred in awarding expert fees.  We agree.
The family court is authorized to use its discretion when awarding expert fees.  Crawford v. Crawford, 301 S.C. 476, 484, 392 S.E.2d 675, 680 (Ct. App. 1990).  However, if the family court did not rely on Wifes expert, there is no basis to award expert fees.  Because the family court did not delineate how it arrived at the value of Blanton Construction, we are unable to determine if the family court actually relied on Wifes expert.  
Therefore, the family courts award of $5,000 in expert fees is reversed and remanded.  We note that if on remand the family court does rely on Wifes expert in analyzing the fair market value, it may use its discretion to award Wife expert fees.
CONCLUSION
Accordingly, the family courts decision is 
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
KITTREDGE, J., concurs. 
HEARN, C.J. (concurring in part and dissenting in part):
I concur in the majoritys decision to reverse the family courts valuation of Blanton Construction at $100,000, and write separately only to express my view that sufficient competent evidence of valuation exists in the record to allow this court to finally resolve the matter.[3]
In appeals from the family court, the appellate court has the authority to find facts in accordance with its own view of the preponderance of the evidence.  Wooten v. Wooten, 364 S.C. 532, 540, 615 S.E.2d 98, 102 (2005).  Moreover, when an order from the family court is issued without the required factual findings, the appellate court may remand the matter to the trial court or, where the record is sufficient, make its own findings of fact in accordance with the preponderance of the evidence.  Griffith v. Griffith, 332 S.C. 630, 646-47, 506 S.E.2d 526, 535 (Ct. App. 1998) (quoting Holcombe v. Hardee, 304 S.C. 522, 524, 405 S.E.2d 821, 822 (1991)).
In Brandi v. Brandi, 302 S.C. 353, 396 S.E.2d 124 (Ct. App. 1990), our court addressed a situation similar to this matterthe valuation of a marital business in the context of an equitable distribution.  In Brandi, the husband argued the family court improperly valued his business.  Id. at 356, 396 S.E.2d at 126.  Our court agreed and held the family court erred because it failed to value Husbands business at its fair market value . . . .  Id.  After so finding, this court explained it had hoped to resolve this matter on the record; however, the record did not contain the evidence necessary to allow such a finding.  Therefore, only after finding the record insufficient did our court remand the action to the family court to make the appropriate valuation.  Id. 
Here, unlike Brandi, the record on appeal is sufficient for us to make the findings of fact necessary to value Blanton Construction.  In the interest of judicial economy, I believe we should undertake the valuation rather than remand to the family court.  See, e.g., Buist v. Huggins, 367 S.C. 268, 275, 625 S.E.2d 636, 639 (2006) (deciding to address the merits of an issue in the interest of judicial economy when the trial court had already heard arguments and addressed the issue, and the record on appeal provided sufficient evidence to make a finding of fact); Southern Bell Tel. and Tel. Co. v. Hamm, 360 S.C. 70, 75, 409 S.E.2d 775, 778 (1991) (electing to address an issue on appeal in the interest of judicial economy after both parties had fully briefed the issue).  
When valuing marital property for the purposes of equitable distribution, a business should be valued at its fair market value as an ongoing business.  RGM v. DEM, 306 S.C. 145, 152, 410 S.E.2d 564, 568 (1991).  Moreover, when the goodwill of a business is dependent upon the business owners future earnings, as is the case here, goodwill is too speculative to be included in the marital estate.  Casey v. Casey, 293 S.C. 503, 504, 362 S.E.2d 6, 7 (1987); see also Donahue v. Donahue, 299 S.C. 353, 359, 384 S.E.2d 741, 745 (1989) (acknowledging that because goodwill is dependent upon future earnings, it is too speculative to be included in the valuation of a business for equitable distribution purposes).  
This case is nearly identical to the situation in Casey.   In that case, Husband owned a fireworks business and operated it as a sole proprietorship.  Casey, 293 S.C. at 504, 362 S.E.2d at 6.  At trial, Wifes expert testified to the fair market value of the business, including the tangible value of the businesss assets and goodwill.  Id.  The family court, in making the equitable distribution, awarded Wife a portion of the businesss fixed assets and goodwill.  Id.  The supreme court reversed, holding goodwill was too speculative to be included in the marital estate, and accordingly, that Wife was only entitled to a portion of the tangible assets of Husbands business.  Id. at 505, 362 S.E.2d at 7.  Likewise, in this matter, Wife is only entitled to an equitable distribution of the tangible assets of Blanton Construction, as any goodwill from Husbands efforts with the sole proprietorship would be dependent on his future earnings and are too speculative to include in the equitable distribution. 
At trial, both Husband and Wife relied on expert testimony to assist the court in establishing the fair market value of Blanton Construction.  Ben Kochenower, Wifes expert, relied upon tax returns, financial statements, depreciation schedules, bank statements, cancelled checks, and personal tax returns in his attempt to value Blanton Construction.  Additionally, Kochenower examined sales of forty-seven other construction companies to assist in his valuation.  He, however, did not use the tangible assets or liabilities of the company in his valuation method.  Instead, Kochenower only provided indicators of value to the family court, not a fair market value.  Husband relied on the expert testimony of Gail Humphries, the accountant for the business who testified directly to the tangible asset value of Blanton Construction.  Humphries calculated the tangible asset value at $17,208 after taking into account the companys tangible assets less outstanding liabilities.[4]  While Humphries used net worth value rather than the magic words fair market value, it is evident from Humphries entire testimony that she placed a fair market value on the business as its tangible assets only.  This view of valuation is consistent with the principles espoused in Casey.
Pursuant to my belief that only the tangible asset value of this business is subject to equitable distribution, sufficient evidence exists in the record to value Blanton Construction at $17,208.  Accordingly, a remand to the family court is both unnecessary and contrary to the interest of judicial economy.[5]

[1] Additionally, the family court should note that when the goodwill of a business is dependent upon the business owners future earnings, the goodwill is too speculative for inclusion in the valuation of the marital estate.  Casey v. Casey, 293 S.C. 503, 504, 362 S.E.2d 6, 7 (1987).
[2] Husband stated in his brief, Mrs. Humphries gave no opinion as to the fair market value of Blanton Construction. 
[3]  Consistent with my view that no remand is warranted, I concur only in the majoritys decision to reverse the award of expert fees to Wife.
[4]  In the opinion, the majority notes that Humphries did not consider Husbands personal checking account, which contained $72,686 . . . on October 7, 2003.  When questioned on cross-examination about this amount, Humphries responded that while this amount was relevant you would also have to his consider his other debts. . . . Hes got to pay back the bank.  Moreover, at oral arguments it was acknowledged that same account contained less than $1,000 at the end of the month.
[5]  Based on my disposition, I need not address the issue as to whether the family court could properly rely on indicators of fair market value in valuing Blanton Construction.  See Whiteside v. Cherokee County Sch. Dist. No. One, 311 S.C. 335, 340, 428 S.E.2d 886, 889 (1993) (stating appellate court need not address remaining issues when resolution of prior issue is dispositive).